DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Craig Neighbor, appeals the order of the Summit County Court of Common Pleas, Domestic Relations Division, that denied his motion to modify the allocation of parental rights and responsibilities with respect to his son. We reverse.
 {¶ 2} Craig and Appellee, Misty Jones, are the parents of C.N., who was born on December 1, 1999. Craig and Misty have never been married. On July 11, 2003, the trial court issued a parenting and support decree that designated Misty as residential parent and granted "liberal companionship time" to Craig. On November 21, 2006, Craig moved for a reallocation of parental rights and responsibilities and for emergency temporary custody of C.N., alleging that Misty had been convicted of unlawful sexual conduct with a minor, sentenced to a residential program at Oriana House, and had left C.N. in the care of her boyfriend. Craig also maintained that Misty had misrepresented her situation by telling him that she had taken C.N. to visit relatives in Florida. The trial court granted Craig emergency temporary custody on November *Page 2 
28, 2006. On March 20, 2007, the magistrate ordered that C.N. remain in emergency temporary custody with Craig, but permitted Misty temporary parenting time of one hour per week. Three days later, the trial court modified the temporary order to allow Misty two hours per week of supervised parenting time at Place of Peace in Ravenna, Ohio.
 {¶ 3} On September 7, 2007, a hearing was conducted before the magistrate, who interviewed C.N. in camera on September 10, 2007. The magistrate agreed that a change in circumstances had occurred with mother's criminal conviction, but concluded that "the change is not continuing" and that "she is now able to provide a home and care for [C.N.]." The magistrate concluded that a reallocation of parental rights and responsibilities would not be in C.N.'s best interest, dismissed Craig's motion, and ordered that "[t]he existing parenting decree remains in effect, whereby the Defendant mother is [C.N.]'s residential parent." Craig filed timely objections. On December 31, 2007, the trial court overruled his objections and ordered that the original parenting decree would remain in effect. Craig filed this appeal, asserting one assignment of error.
 ASSIGNMENT OF ERROR "The trial court erred and abused its discretion in dismissing Craig Neighbor's motion for reallocation of parental rights and responsibilities as it failed to properly weigh all of the factors in determining the best interest of the minor child."
 {¶ 4} Craig's first assignment of error is that the trial court abused its discretion by denying his motion for reallocation of parental rights. He has argued that the trial court: (1) erred by concluding that, while a change of circumstances had occurred, it was not continuing; and (2) failed to properly consider the factors related to the best interest of the child set forth in R.C. 3109.04(F)(1). We agree. *Page 3 
 {¶ 5} Because the determination to adopt, reject, or modify a magistrate's decision lies within the discretion of the trial court, this Court reviews a trial court's action for abuse of discretion.Briarwood v. Bratanov, 9th Dist. No. 23318, 2007-Ohio-2476, at ¶ 9, citing Kalail v. Dave Walter, Inc., 9th Dist. No. 22817, 2006-Ohio-157, at ¶ 5. This standard applies with equal relevance in domestic relations cases that were referred to a magistrate pursuant to Civ. R. 53. See, e.g., Frahlich v. Frahlich-Lerch (Aug. 23, 2000), 9th Dist. No. 19807, at *2. See, also, Markley v. Markley, 9th Dist. No. 06CA0043,2007-Ohio-886, at ¶ 8 (describing this Court's standard of review with respect to motions to modify parental rights and responsibilities).
 {¶ 6} R.C. 3109.04(E)(1)(a) describes the circumstances in which parental rights and responsibilities may be modified:
 "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child [or] the child's residential parent * * * and that the modification is necessary to serve the best interest of the child."
The statute, therefore, requires a two-part determination: whether a change in circumstances has occurred and, if so, whether a modification is in the best interest of the child. Markley at ¶ 10. A change in circumstances denotes "an event, occurrence, or situation which has a material and adverse effect upon a child." Rohrbaugh v. Rohrbaugh
(2000), 136 Ohio App.3d 599, 604-05, citing Wyss v. Wyss (1982),3 Ohio App.3d 412. It must be a substantial change, neither slight nor inconsequential. Saal v. Saal, 146 Ohio App.3d 579, 2001-Ohio-1518, at ¶ 10, citing Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418. It follows that a change in circumstances, as contemplated by R.C. 3109.04(E)(1)(a), cannot be incidental or fleeting. "Change of custody cannot properly be used as a penalty for past misconduct where the misconduct is not continuing *Page 4 
and not shown to materially adversely affect the child." Wyss at 414, citing Wedren v. Wedren (Aug. 27, 1984), 10th Dist. No. 74-AP-013.
 {¶ 7} In this case, the trial court concluded that although Misty's conviction and thirty-day confinement in Oriana House constituted a change in circumstances, it was neither substantial nor material and did not have a materially adverse effect on C.N. As the magistrate's decision stated:
 "15. The magistrate finds that there was a change of circumstances, namely the mother's unlawful sexual conduct with a 15-year-old boy and her subsequent confinement at Oriana House, but that the change is not continuing. The mother is no longer confined, and she is now able to provide a home and care for [C.N.].
 "16. Although the magistrate cannot and does not approve of the mother's conduct with respect to the neighbor boy, the conduct did not affect [C.N.] except insofar as the mother was confined at Oriana House. Immoral conduct is relevant to parenting proceedings only insofar as it has a direct or probable effect on the child."
It appears that in adopting this determination, the trial court blended the requirement of a change in circumstances with its analysis of best interests under R.C. 3901.04(F) by concluding that that Misty's criminal conviction was a change in circumstances, but one which was ameliorated by the duration of her confinement so that no adverse consequences to C.N. resulted. In other words, the trial court treated Misty's incarceration as a temporary change in circumstances without considering whether her conviction for sexual contact with a minor in and of itself warranted modification.
 {¶ 8} Regardless, however, it appears that the trial court did determine that a change in circumstances had occurred because it continued by analyzing whether a modification of parental rights would be in C.N.'s best interests. This Court finds the trial court's analysis deeply troubling in this respect. While it is accurate to say, as the trial court noted, that "[i]mmoral *Page 5 
conduct is relevant to parenting proceedings only insofar as it has a direct or probable effect on the child," this Court is not aware of any cases in which this analysis has been applied in the context of parent who has been convicted of a sexually oriented offense involving a minor. This misapplication finds no support in the cases cited by the trial court, which relate exclusively to debatable lifestyle choices made by parents. See, e.g., Dexter v. Dexter, 11th Dist. No. 2006-P-0051,2007-Ohio-2568 (considering mother's religion, sexual preferences, and lifestyle choices, including discussion of past illegal drug use in an online journal); Mills v. Mills, 11th Dist. No. 2002-T-0102,2003-Ohio-6676, at ¶ 38-40 (presuming regularity when the record did not substantiate father's concerns about mother's decision making and conduct); Anderson v. Anderson, 147 Ohio App.3d 513, 2002-Ohio-1156, at ¶ 48 (considering extramarital affairs of mother); Dilworth v.Dilworth (1996), 115 Ohio App.3d 537, 541 (analyzing the impact of mother's male overnight guests); Rowe v. Franklin (1995),105 Ohio App.3d 176, 180 (considering mother's nonmarital sexual activity and lifestyle choices related to her career); Whaley v. Whaley (1978), 61 Ohio App.2d 111, 119 (addressing the effect of a parent's sexual activity on custody determinations in general).
 {¶ 9} Misty did not make a lifestyle choice. She committed a sexually oriented criminal offense against a minor and is required to register as a sexually oriented offender. Such criminal activity is qualitatively different than the actions of the parents in the cases cited by the trial court. This Court concludes, therefore, that the trial court abused its discretion by failing to properly consider whether Misty's conduct constituted a change in circumstances and whether, in light of the nature of her criminal offense, it was in C.N.'s best interest to remain in her custody. In so holding, we emphasize that this is a heartbreaking and difficult case. It is evident from the record on appeal that neither Misty nor Craig are untarnished when it comes to *Page 6 
parenting C.N. Craig's actions with respect to his son — particularly that the trial court learned through C.N. in camera that Craig told the boy that his mother had tried to place him for adoption — are also disturbing. Nonetheless, in light of the trial court's misapplication of R.C. 3901.04 in this case, Craig's assignment of error is sustained. This matter is remanded to the trial court for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellee.
 CARR, P. J. MOORE, J. CONCUR *Page 1