[Cite as *In re C.F.*, 2015-Ohio-5537.]

STATE OF OHIO             )                IN THE COURT OF APPEALS
                          )ss:              NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE           )

IN RE: C.F.                                 C.A. No.      14AP0053


                                            APPEAL FROM JUDGMENT
                                            ENTERED IN THE
                                            COURT OF COMMON PLEAS
                                            COUNTY OF WAYNE, OHIO
                                            CASE Nos.    11-0812-CCV
                                                         11-1101-SEM

DECISION AND JOURNAL ENTRY

Dated: December 31, 2015

_____

        HENSAL, Presiding Judge.

        {¶1}   Kaleb Fitzpatrick appeals a judgment of the Wayne County Court of Common

Pleas, Juvenile Division, that granted Charmaine Zerga's motion to modify decree.  For the

following reasons, this Court affirms.

                                            I.

        {¶2}   Ms. Zerga gave birth to C.F. in October 2008.  After Mr. Fitzpatrick was

established as C.F.'s father, Mother and Father entered into a shared parenting plan.  Mother

later moved to transfer custody of C.F. to her mother because she intended to enter the military.

In February 2012, the juvenile court terminated the shared parenting plan and designated Father

as the residential parent and legal custodian of C.F.    It also granted Mother visitation on an

alternating week basis until she enlisted.

        {¶3}   Mother did not end up joining the military, so the parties continued following the

juvenile court's alternating week schedule.  In September 2013, Mother moved for a change in

custody, alleging that Father was not providing C.F. with a stable home. In response, Father moved for an increase in child support.

{¶4} Following a hearing before a magistrate, the magistrate found that there had been a change in the circumstances of the parties and that it was in the best interest of C.F. to designate Mother as the custodial parent. It recommended that Father receive parenting time in accordance with the court's local rule, but not until he could establish that he was not using illegal drugs. The juvenile court overruled Father's objections to the magistrate's decision and issued an order that was consistent with that decision. Father has appealed, assigning four errors.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT FAILED TO PROVIDE FOR THE MINOR CHILD'S BEST INTEREST BY GRANTING THE MOTION OF CHARMAINE ZERGA AND DESIGNATING HER AS THE CUSTODIAL PARENT OF [C.F.].

{¶5} Father argues that the juvenile court incorrectly modified its parenting order. Ohio Revised Code Section 3109.04(E)(1)(A) provides that a court

shall not modify a prior decree allocating parental rights and responsibilities * * * unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at [that] time * * * that a change has occurred in the circumstances of the child [or] the * * * residential parent * * * and that the modification is necessary to serve the best interest of the child.

In addition, "the court shall retain the residential parent designated by the prior decree * * * unless * * * [t]he harm likely to be caused by a change in environment is outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a)(iii).

{¶6} Father argues that the juvenile court incorrectly found that there was a change in circumstances. The Ohio Supreme Court has explained that, to warrant a change of custody, "the change must be a change of substance, not a slight or inconsequential change." *Davis v.*

*Flickinger*, 77 Ohio St.3d 415, 418 (1997). Although the intent of the statute is to spare children from a constant tug of war between their parents, a trial court has wide latitude in determining whether a change has occurred and its decision will not be reversed absent an abuse of discretion. *Id.*

{¶7} The juvenile court found that there had been a change in circumstances because from January 2013 until Mother moved for a change of custody, C.F. was cared for a majority of the time by C.F.'s paternal grandmother and her spouse during Father's custody weeks. It also found that, since the prior parenting designation, Father had engaged in self-harming cutting behavior, that he had entered a hospital to seek treatment for mental health problems, that he was receiving psychotherapy and shock therapy, and that he was taking medication for his mental health conditions. It further found that he had used marijuana during the period, including as recently as a month before the hearing.

{¶8} Father notes that there were never any criminal charges brought against him and that he was never investigated by Children's Services. He argues that there is nothing wrong with C.F. having a close relationship with his grandparents. He also argues that his mental health issue is depression, for which he was already taking medication before the last custody determination. He contends that he entered the hospital voluntarily for one week to seek additional treatment for his condition. He further argues that Mother did not present any evidence that his depression or drug use affect his ability to parent C.F.

{¶9} This Court has recognized that mental health issues may constitute a change in circumstances. *Goad v. Goad*, 9th Dist. Medina No. 13CA0097-M, 2014-Ohio-3534, ¶ 15. Although Mother admits that Father may have told her that he had depression and was on medication before the last custody order, there is no evidence that she was aware that he engaged

in self-cutting. His depression also had not been so severe as to require hospital admission. We further note that, if grandparents have usurped primary care of a child, it can be considered a change in circumstances. *Turner v. Turner*, 7th Dist. Jefferson No. 11-JE-5, 2012-Ohio-2050, ¶ 31-32, 37; *Sutton v. Sutton*, 2d Dist. Montgomery No. 24108, 2011-Ohio-1439, ¶ 19. According to the spouse of Father's mother, whom the magistrate found credible, until Mother moved for a change in custody, Father "never had [C.F.] a day by himself or overnight by himself * * *." We, therefore, conclude that the juvenile court did not abuse its discretion when it determined that there had been a change in circumstances.

{¶10} Father argues that, even if there was a change in circumstances, the juvenile court incorrectly found that it is in C.F.'s best interest for Mother to be the custodial parent. *See* R.C. 3109.04(E)(1)(a). He also argues that the advantages of changing C.F.'s environment do not outweigh the harm that is likely to be caused by the change. R.C. 3019.04(E)(1)(a)(iii). According to Father, Mother failed to show that there are any advantages that C.F. will enjoy under the new arrangement that justify damaging the close bond that C.F. shares with his father and paternal grandparents and disrupting the world C.F. has known for several years.

{¶11} Section 3109.04(F) identifies ten factors that a trial court must consider in determining the best interest of a child. The court must also consider any other relevant factors. R.C. 3109.04(F)(1). "[A]bsent an argument that the trial court reached an incorrect factual determination on one or more of the best interest prongs, this Court will review a trial court's best interest analysis under an abuse of discretion standard of review." *Walsh-Stewart v. Stewart*, 9th Dist. Wayne No. 12CA0031, 2012-Ohio-5927, ¶ 20. We review the court's determination that the harm likely to be caused by a change in environment is outweighed by the

advantages of the change under the same standard. *Truax v. Regal*, 9th Dist. Summit No. 20902, 2002-Ohio-4867, ¶ 29.

{¶12} The juvenile court determined that not all of the factors listed in Section 3109.04(F) were relevant to this case. It was concerned about Father's cutting behaviors and found that he was not an effective parent when his mental health was not stable. It also found that his public attacks against Mother on Facebook and his demeanor during the hearing, as described by the magistrate, evidenced that Mother would be more likely to facilitate visitation. It also found that, in light of the evidence that Father's mother is the primary caregiver for C.F. during Father's custody weeks, Father's parenting time would not be greatly affected by a change in custody.

{¶13} The juvenile court's findings regarding the best-interest factors are supported by the record. We also note that, in contrast to the concerns that the court had about Father's ability to parent C.F., Father did not express any concerns about Mother's ability, testifying that she is a good mother and that he trusts C.F. with her. Upon review of the record that was before the juvenile court, we cannot conclude that it abused its discretion when it determined that it is in C.F.'s best interest for Mother to be the custodial parent and that the advantages afforded to C.F. by a change in environment outweigh any potential harm. Father's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY REQUIRING KALEB FITZPATRICK TO TESTIFY REGARDING WHETHER HE HAD USED ILLEGAL SUBSTANTCES, SPECIFICALLY MARIJUANA, OVER THE OBJECTION OF COUNSEL.

{¶14} Father argues that the magistrate forced him to respond to questions about his marijuana use even though he asserted his Fifth Amendment right against self-incrimination. We

note that, although Father's counsel objected to the questions at the hearing, Father did not object to the magistrate's decision on this basis. "Failure to specifically raise an argument in an objection to a magistrate's decision results in a forfeiture of that argument on appeal." *Coleman v. Coleman*, 9th Dist. Summit No. 27592, 2015-Ohio-2500, ¶ 9, citing Civ.R. 53(D)(3)(b)(iv). Although Father has not forfeited plain error, he does not argue plain error in his appellate brief, and we will not construct such an argument for him. *Akron Children's Hosp. v. Paluch*, 9th Dist. Summit No. 27557, 2015-Ohio-2375, ¶ 6. Father's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY ORDERING THAT THERE WOULD BE NO VISITATION BETWEEN KALEB FITZPATRICK AND THE MINOR CHILD, NOT EVEN SUPERVISED VISITATION, UNTIL SUCH TIME AS KALEB UNDERGOES A DRUG SCREEN AND SUBMITS PROOF THAT HE IS NOT USING ILLEGAL DRUGS.

{¶15} Father next argues that the juvenile court erred when it conditioned his ability to see C.F. on his submission to the court of drug screening test results evidencing that he was not using illegal substances. He argues that there was no evidence that his previous use of marijuana had any effect on C.F. or his ability to parent C.F. According to Father, he never smoked marijuana while C.F. was in his custody. He also argues that the harm to C.F. from not seeing Father is greater than any possible detriment from his former drug use.

{¶16} Section 3109.051 governs a trial court's decisions as to visitation. *Braatz v. Braatz*, 85 Ohio St.3d 40, 44 (1999); R.C. 3109.12(B). "When a trial court determines parenting time under R.C. 3109.051, it must do so consistent with the best interests of the children involved with consideration of the factors mentioned in R.C. 3109.051(D)." *Pirkel v. Pirkel*, 9th Dist. Lorain No. 13CA010436, 2014-Ohio-4327, ¶ 9. In order to further a child's best interests, the court has the discretion to limit or restrict visitation rights, including "the power to restrict

the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child." *Marrero v. Marrero*, 9th Lorain No. 02CA008057, 2002-Ohio-4862, ¶ 9, quoting *Anderson v. Anderson*, 147 Ohio App.3d 513, 2002-Ohio-1156, ¶ 18 (7th Dist.). "We review a decision regarding parenting time for an abuse of discretion." *Pirkel* at ¶ 9.

**{¶17}** The trial court rejected Father's objection to the clean drug screen condition, noting that marijuana use is still considered criminal behavior in Ohio. It also expressed concern about the interaction marijuana might have with Father's prescription medication. It concluded that, in light of those concerns and Father's mental health issues, it was in C.F.'s best interest to adopt the magistrate's recommendations regarding Father's visitation time.

**{¶18}** Although upon an independent review of the facts, we would conclude that it may not further C.F.'s best interest to have zero contact with Father until he passes a drug screen, in light of the evidence and arguments proffered below, we cannot say that the juvenile court's imposition of the drug-screening condition was unreasonable, arbitrary, or unconscionable. *See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983) (defining "abuse of discretion" in a domestic relations context and explaining that an appellate court may not substitute its judgment for that of the trial court). To the extent that Father's assignment of error suggests that he should at least have supervised visits until he passes a drug test, we note that he did not make that argument to the trial court in his objections to the magistrate's decision, and he has not developed such an argument in his appellate brief. Civ.R. 53(D)(3)(b)(iv); App.R. 16(A)(7). Father's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN ITS CALCULATION OF CHILD SUPPORT BY USING $24,450.00 AS INCOME FOR KALEB FITZPATRICK AND $10,576.00 AS INCOME FOR CHARMAINE ZERGA.

{¶19} Father also argues that the trial court should have imputed additional income to Mother when it calculated his child support obligation. According to Father, Mother testified that she works less than 40 hours a week and there was no evidence that she could not work full time. He also argues that he no longer works a second job, so the trial court should have adjusted his annual income to account for the change.

{¶20} "In determining the appropriate level of child support, a trial court must calculate the gross income of the parents." *Bajzer v. Bajzer*, 9th Dist. Summit No. 25635, 2012–Ohio–252, ¶ 11. "Gross income" is "the total of all earned and unearned income from all sources during a calendar year[.]" R.C. 3119.01(C)(7). A parent's total gross income figure will include any "potential income" that a trial court imputes upon a finding that the parent is voluntarily unemployed or underemployed. *Collins v. Collins*, 9th Dist. Wayne No. 10CA0004, 2011–Ohio–2087, ¶ 26, quoting R.C. 3119.01(C)(5)(b). The burden of proof is on the parent who is claiming that the other is voluntarily unemployed or underemployed. *Knouff v. Walsh-Stewart*, 9th Dist. Wayne No. 09CA0075, 2010-Ohio-4063, ¶ 27.

{¶21} At trial, Father did not argue that Mother was voluntarily underemployed or present any evidence that she could earn additional income. We, therefore, conclude that the juvenile court did not err when it calculated Mother's gross income. Regarding Father's income, an exhibit indicates that Father worked 252.5 hours at his first job over an eight week period, an average of 31.5 hours a week. Father testified that he earns $3.98 an hour. Assuming Father continues to work the same hours, he would earn $6,519 in wages over the course of a year.

Father also testified that he earns $350 to $400 a week in tips, which is $18,200 to $20,800 a year. Although Father argues that the court should have used $18,200 as his income for purposes of calculating child support, it appears that he has overlooked his hourly wage income. We note that the juvenile court did not include Father's income from his second job in its child support calculation, concluding that the amount Father earns in wages and tips from his first job easily reaches the $25,450 that the magistrate attributed to him. Upon review of the record, we conclude that the court's determination of Father's income is supported by the record. Father's fourth assignment of error is overruled.

### III.

{¶22} Father's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

SCHAFER, J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶23} I respectfully dissent from the majority opinion insofar as it overrules Father's third assignment of error. Although Father may not have fully developed the statutory analysis set forth below, he did argue through his objections to the magistrate's decision and his third assignment of error that the trial court erred in denying him parenting time with his child. The majority recognizes that R.C. 3109.051 governs a trial court's decision regarding parenting time with a nonresidential parent, but the trial court's decision failed to mention that statute. Instead, its decision appears to be based entirely on whether to change the child's residential parent under R.C. 3109.04, without considering the requirements of R.C. 3109.051 to allocate parenting time to Father.

{¶24} Although R.C. 3109.051 has been amended since Mother filed her motion to modify the parties' parental rights and responsibilities, the language relevant to this issue was not affected by the amendment.[1] R.C. 3109.051(A) required the trial court to enter an order for the nonresidential parent to have parenting time with the child "unless the court determine[d] that it

_____

[1] The trial court was required to consider the version that was in effect when Mother filed her motion. *Masters v. Masters*, 69 Ohio St.3d 83, 85, fn. 1 (1994); *Markely v. Markely*, 9th Dist. Wayne No. 06CA0043, 2007-Ohio-886, ¶ 9, fn. 1.

would not be in the best interest of the child to permit that parent to have parenting time with the child and includes in the journal its findings of fact and conclusions of law." R.C. 3109.051(A) further provides that, "[w]henever possible," the parenting time order "shall ensure the opportunity for both parents to have frequent and continuing contact with the child, unless frequent and continuing contact by either parent with the child would not be in the best interest of the child." Loc.R. 11(C) of the Court of Common Pleas of Wayne County, Juvenile Division, also encourages liberal visitation and provides that "to the extent possible, [the visitation schedule] should encourage periods of visitation of significant duration[.]" The local rule further provides that, if the parties cannot agree on their own visitation schedule, the trial court will normally order visitation under its standard order "unless the particular circumstances indicate that such visitation would not be in the best interest of the children."

{¶25} As this Court emphasized in *Szymczak v. Tanner*, 9th Dist. Medina No. 10CA0101-M, 2012-Ohio-540, both the statute and the local rules contemplate that the standard order of parenting time is in the child's best interest, absent specific circumstances to demonstrate that it is not. *Id*. at ¶ 23 (citing comparable language from Loc.R. 6.05 of the Court of Common Pleas of Medina County, Domestic Relations Division). R.C. 3109.051(F)(2) explicitly limits a trial court's "'discretion to *deviate* from its standard parenting time guidelines" to the factors set forth in R.C. 3109.051(D). (Emphasis in original.) *Id*. The trial court failed to set forth findings under the R.C. 3109.051(D) to explain its decision to deviate from the standard parenting time order, much less to completely deny Father any contact with his child whatsoever.

{¶26} The trial court failed to follow the requirements of R.C. 3109.051 or its own local rule to allow liberal parenting time, absent specific facts to demonstrate that a deviation from the standard order of parenting time would be in the best interest of the child. Even if the trial

court's concerns about Father's mental health and alleged marijuana use justified some restrictions on the standard order of parenting time, under the specific facts in this case, I cannot agree that the trial court had the discretion to require Father to disprove all allegations of his marijuana use before he could exercise his statutory right to have parenting time with his child.

{¶27} For these reasons, I would sustain Father's third assignment of error. I concur in the remainder of the majority opinion.

APPEARANCES:

ROSANNE K. SHRINER, Attorney at Law, for Appellant.

TODD E. CHEEK, Attorney at Law, for Appellee.